| | |
|---|---|
| **In re: JAMES W. CORBETT and DAISY A. CORBETT,** | 1:16-cv-01517-LJO |
| Debtors. | **MEMORANDUM DECISION AND ORDER RE BANKRUPTCY APPEAL** |
| **CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION BENEFIT TRUST FUND,** | |
| Appellant, | |
| v. | |
| **DAISY A. CORBETT,** | |
| Appellee. | |

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

# I. <u>INTRODUCTION</u>

This matter comes before the Court on California Correctional Peace Officers Association Benefit Trust Fund's ("Appellant" or "Trust") appeal, pursuant to 28 U.S.C. § 158(a), from the September 21, 2016, oral decision and order of the United States Bankruptcy Court for the Eastern District of California. *See* ECF Document No. ("Doc.") 8 at 598-653. Appellant filed its notice of appeal on October 7, 2016. Doc. 1. Appellant filed a brief on January 6, 2017. Doc. 6. Appellee did not file a responsive brief. On April 6, 2017, at the Court's request, Appellant filed a brief pertaining to the effect of Appellee's failure to file a responsive brief.[1] Doc. 11. The Bankruptcy Court found that Appellant was not entitled to an equitable lien against funds awarded to Daisy Corbett ("Appellee" or "Ms.

---

[1] Appellant asserted that Appellee's failure to file a responsive brief barred Appellee from participating in oral arguments, absent an order by the Court to the contrary. Doc. 11 at 2.

Corbett") as worker's compensation. For the reasons set forth below, the decision of the Bankruptcy Court as it pertains to the existence of an equitable lien under federal law is vacated.

## II. BACKGROUND

The following facts are drawn from the uncontroverted facts, the facts stipulated to for the Bankruptcy Court trial, and Appellant's brief. Appellant does not dispute the factual findings made by the Bankruptcy Court.

Appellee was employed as a Correctional Counselor at Corcoran State Prison, and was a participant in the employee welfare benefit plan administered by the California Correctional Peace Officers Association ("CCPOA"). Doc. 8 at 417. Appellant is a trust fund and a "self-insured employee welfare benefit plan" maintained by CCPOA which advances money to enrollees prior to their receipt of worker's compensation benefits. Doc. 8 at 417. The Trust is self-funded and self-insured, and is a Disability Benefit Program and a self-funded Employee Welfare Benefit Plan under ("ERISA"). *Id*. at 133. Appellant has a fiduciary obligation to obtain reimbursement where an injured worker received benefits from Appellant and subsequently receives duplicate benefits for the same period of disability as worker's compensation. *Id*.

Appellee was injured at work in 1996 and filed a claim with the Workers' Compensation Appeals Board ("WCAB"), and in 2005 she became unable to work. *Id*. at 134, 417. While her claim was pending before the WCAB, Appellee sought an advance from the Trust. On October 1, 2005, Appellee signed a reimbursement agreement and assignment of proceeds (the "Agreement"). *Id*. at 417, 421. The Agreement provided, in part, that payment to Appellee be:

> conditioned on the Trust's right of reimbursement up to the full extent of benefits paid by the Program on the claims, in the event [Appellee recovers] (i) damages or proceeds (or if any party or entity recovers damages or proceeds on [Appellee's] behalf), by award, settlement, insurance, or otherwise, for medical and other expenses (regardless of how such award, settlement or otherwise is structured or itemized); or (ii) any proceeds from

occupational insurance purchased by [Appellee's] employer, or provided under state workers' compensation acts, employer liability laws, or other laws providing compensation for work-incurred injuries. In consideration of payment of benefits by the Program related to the clams, [Appellee agrees] as follows: To repay and hereby assign to the Trust the proceeds of any and all recovery/ies made from any responsible party or insurer to [Appellee] or to any person or entity on [her] behalf, to the extent of any benefits provided by the Program (minus any share of reasonable attorney's fees, determined according to the Program rules).

*Id*. at 420. Between August 5, 2005, and May 4, 2007, Appellee was advanced a total of $85,986.90 from the Trust, which was equal to 65% of Appellee's base pay for that period of time. *Id*. at 136; 419.

On February 21, 2008, Appellee filed a voluntary bankruptcy petition under Chapter 7 of U.S. Code Chapter 11. *Id*. at 418. Appellee did not list her workers' compensation claim on Schedule B, exempt it on Schedule FC, or list the claim in her Statement of Financial Affairs. *Id*. at 418. Appellee listed CCPOA as a general unsecured creditor to the amount of $56,658.20 on Schedule F. *Id*. A Trustee was appointed, who filed a No Asset Report, and on June 3, 2008, Appellee's bankruptcy discharge was entered and her bankruptcy case closed on June 10, 2008. *Id*. at 137; 418.

On March 25, 2009, the Trust filed a claim with the WCAB in Ms. Corbett's worker's compensation case in the amount of $85,986.90. *Id*. at 418. Pursuant to an agreement between Appellee and the California Department of Corrections and Rehabilitation, Appellee was awarded temporary disability benefits equal to 66.67% of her base pay from November 17 to 19, 1997, November 21 to December 5, 1997, July 14, 1998, to November 1, 1999, and July 11, 2005 to August 5, 2009. *Id*. at 136-37; 419. The award provided for $85,986.90 to be withheld pending the resolution of the CCPOA claim. *Id*. at 429.

On February 7, 2011, the Trust filed a motion to reopen the bankruptcy case, which was granted on February 11. *Id*. at 300-01. The Bankruptcy Court reappointed the trustee, who successfully moved

the Bankruptcy Court to order the withheld award monies turned over to him. *Id*. at 303; 608. Appellant filed a proof of claim in Appellee's bankruptcy case asserting its lien against the awarded funds. *Id*. at 609. The Trustee's final report, filed on July 17, 2012, proposed allocating $76,202.18 to Appellant. *Id*. at 332. No objection to the proposed allocation was filed, and the Trustee paid Appellant the proposed sum. *Id*. at 609. Appellee objected after the Trustee distributed the funds, and filed amended schedules claiming that the $85,986.90 was exempt. *Id*. The Trustee objected to the amendment, and, after a hearing, the Bankruptcy Court overruled Appellee's objection. *Id*. Appellee appealed to the Bankruptcy Appellate Panel ("BAP"), which vacated the Bankruptcy Court's decision and remanded the case. *Id*.

Appellant subsequently brought this action to determine the validity, priority, and extent of its lien and seeking declaratory relief that the lien was not discharged and was superior to any claim of exemption. *Id*. at 610. On September 21, 2016, the Bankruptcy Court entered oral findings of fact and conclusions of law. *Id*. at 598. The Bankruptcy Court found that the worker's compensation claim was an asset of Appellee's bankruptcy estate and remained an asset of the estate after the bankruptcy case closed. *Id*. at 617. The Bankruptcy Court also found that Appellant was not entitled to an equitable lien against the award funds under federal law. *Id*. at 639.

### III. <u>STANDARD OF DECISION</u>

A district court considering a bankruptcy court's decision applies the same standard of review as a circuit court would. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). A bankruptcy court's legal conclusions are reviewed de novo and its findings of fact for clear error. *In re Leavitt*, 171 F.3d 1219, 1222 (9th Cir. 1999). Mixed questions of law and fact are reviewed de novo. *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004).

### IV. <u>ANALYSIS</u>

**A.      <u>Equitable Lien Standard</u>**

"Generally, an equitable lien is a right, not recognized at law, which a court recognizes and enforces as distinct from strictly legal rights, to have a fund or specific property, or the proceeds, applied

4

in full or in part to the payment of a particular debt or demand." 53 C.J.S. Liens § 16 (2017). "It is well settled and an agreement to charge, or to assign, or to give security upon, or to affect property not yet in existence . . . creates no legal estate or interest in the things when they afterwards come into existence or are acquired by the promisor, [but] does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract." 3 Pomeroy's Equity Jurisprudence § 1236 p. 2472 (1905).

An equitable lien by agreement is distinct from an equitable lien sought or imposed as a matter of restitution. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 364-65 (2006). *Sereboff*, drawing from the law of equitable liens by agreement, a procedure used during the time when the bench was divided between courts of law and equity, explained that reimbursement sought from an ERISA plan beneficiary pursuant to a subrogation agreement was an equitable relief authorized by ERISA. *Id*. at 363-64. When an agreement regulated by ERISA incorporates a subrogation and reimbursement provision, an equitable lien may arise based on "'the familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets title to the thing.'" *Id*. (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)).

Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(3), permits a ERISA plan fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id*. In *Sereboff*, the Supreme Court explained that an equitable lien by agreement could be used to enforce the terms of an agreement governed by ERISA through a suit under § 502. *Sereboff*, 547 U.S. at 363-64. The nature of the recovery sought must be equitable, meaning that the recovery may not come from the general assets of the beneficiary or defendant. *Id*. at 363. Additionally, the basis for the claim must be equitable, meaning that the basis must be one cognizable to an historic court of equity. *Id*. The *Sereboff* Court found such a basis

in a rule of equity which allowed a claimant "to 'follow' a portion of the recovery 'into the Sereboff's hands' 'as soon as the settlement fund was identified,' and impose on that portion a constructive trust or equitable lien." *Id*. at 364 (brackets omitted) (quoting *Barnes*, 232 U.S. at 123).

Applying the principles discussed in *Sereboff*, The Ninth Circuit has held that three criteria must be satisfied to establish an equitable lien by agreement in an ERISA action. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092 (9th Cir. 2012). The three criteria are:

> *First*, there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party. *Second*, the reimbursement agreement must specifically identify a particular fund, distinct from the beneficiary's general assets, from which the fiduciary will be reimbursed. *Third*, the funds specifically identified by the fiduciary must be within the possession and control of the beneficiary.

*Id*. at 1092-93 (italics in original) (internal citations, quotation marks, and brackets omitted). As the three *Bilyeu* criteria are the crux of Appellant's argument, the Court will address each in turn.

**B.     First *Bilyeu* Criterion: An Agreement to Reimburse**

The Bankruptcy Court did not make a specific conclusion as to the first criterion, stating only that the remaining two were not satisfied. Doc. 8 at 635. Appellant contends that the Bankruptcy Court implied that the first criterion was been satisfied. Doc. 6 at 19. Regardless of the fact that the Bankruptcy Court did not explicitly make a conclusion on this element, the Court finds that it has been met. That Ms. Corbett signed the Agreement with Appellant to "repay and hereby assign to [Appellant] the proceeds of any and all recovery/ies made from any responsible party or insurer to [Appellee]." Doc. 8 at 420. The Agreement clearly contemplates an intention to reimburse Appellant with the proceeds of any future recovery. There is no dispute as to the authenticity of the Agreement. Therefore, the first *Bilyeu* criterion is satisfied.

6

**C. Second *Bilyeu* Criterion: Identification of a Particular Fund**

The Bankruptcy Court concluded that the second criterion was not met here because the Agreement was overbroad. Doc. 8 at 637. Citing California Labor Code § 4901 and § 4903.1(a)(3)(A), the Bankruptcy Court explained that, while the Agreement purported to reach all proceeds from recoveries made by Ms. Corbett, the California Labor Code restricts liens against a workers' compensation award to the portion of the award that compensates for temporary disability. *Id*. at 637-38. Since the property or fund identified in the Agreement would include elements to which a lien may not attach, the Bankruptcy Court found that the Agreement lacked specificity. *Id*. at 638. The Bankruptcy Court also found that the temporary disability award, which is the only portion of the workers' compensation award to which the lien can attach, was not itself a specific, particular fund but rather a specific amount of money within the workers' compensation award and was therefore not a specific fund. *Id*.

Appellant contends that the Agreement specifically identifies "proceeds from occupational insurance provided under state workers' compensation acts" as the fund from which reimbursement would be made. Doc. 6 at 24. Since the award funds are part of an occupational insurance payment which was provided for under California workers' compensation law, the award funds are specifically identified in the Agreement. *Id*. Appellant argues that the Bankruptcy Court erred in finding that the California Labor Code restricts liens on workers' compensation because § 4903.1(a)(3)(A) does not state any restriction on such liens. *Id*. at 26-27. Additionally, Appellant argues that the Bankruptcy Court's finding that, even if the Agreement was limited to the temporary disability award, the fund would not be sufficiently specific is flawed because it is based on circular reasoning. *Id*. at 27.

Analyzing the second criterion, the *Bilyeu* court identified as "plausible but problematic" the fiduciary's argument in that case that overpaid long-term disability benefits was a specific fund which came into being when the beneficiary received his social security disability benefits. 683 F.3d at 1093. Since the overpaid funds never existed as an object with an independent existence apart from the larger

fund of long-term disability benefits paid by the fiduciary to the beneficiary, the Ninth Circuit indicated that the second criterion was not met. *Id*. It is somewhat difficult to make out a meaningful distinction between the funds identified in the Agreement here and the one which the *Bilyeu* court found troublesome, which required the beneficiary to reimburse "any overpayment resulting from [the beneficiary's] receipt of benefits from other sources." *Id*. at 1090.

It is useful in this matter to consider the broader principles which govern equitable liens. When determining whether an equitable lien may be asserted, courts are concerned with finding the line where an equitable remedy against specific property becomes an impermissible general money judgment. *See Sereboff*, 547 U.S. at 362-63; *Bilyeu*, 683 F.3d at 1094-95. Equitable liens "are ordinarily enforceable only against a specifically identified fund because an equitable lien 'is simply a right of a special nature *over* the thing . . . so that the very thing itself may be proceeded against in an equitable action.'" *Montanile v. Bd. of Trs. Of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. ___,136 S. Ct. 651, 659 (2016) (quoting 4 *S. Symons, Pomeroy's Equity Jurisprudence* § 1233, p. 692). An equitable lien may only obtain against specific property because a lien against the beneficiary for a certain sum is directed toward the person, rather than property, and is a quintessential money judgment at law. An equitable lien may only obtain against property in the possession and control of the beneficiary because a lien against property which the beneficiary has sold or spent would impose dollar for dollar tracing through the beneficiary's assets and create a sum certain out of an undifferentiated mass.

The Supreme Court has also held that a plan which provided that "'any amounts' that a participant 'recover[s] from another party by award, judgment, settlement or otherwise . . . will promptly be applied first to reimburse the Plan in full for benefits advanced by the Plan'" and a reimbursement agreement wherein a beneficiary agreed "to reimburse the plan from any recovery he obtained 'as a result of any legal action or settlement or otherwise'" specifically identified a fund for the purpose of establishing an equitable lien. *Montanile*, 136 S. Ct. at 655-56. In *Montainile*, the Court held that, while an equitable lien could be asserted against tort settlement proceeds, the beneficiary had dissipated some

8

or all of the proceeds and the fiduciary had no remedy to enforce the lien against the beneficiary's general assets. *Id*. at 658, 662. The beneficiary's recovery was therefore limited to the amount of undissipated settlement funds. *Id*. at 662. Again, the Supreme Court's concern was that an equitable lien only be permitted to the extent that it could be asserted against the specific property identified in the Agreement.

Applying the second *Bilyeu* criterion in accordance with those equitable principles to the facts here, the Court finds that the Agreement identifies a sufficiently specific fund. The Agreement provides that Appellee will "repay and hereby assign to the Trust the proceeds of any and all recovery/ies made from any responsible party or insurer to [Appellee]." Doc. 8 at 420. Appellee's repayment obligation is triggered by the recovery of "any proceeds from occupational insurance . . . provided under state workers' compensation acts, employer liability laws, or other laws providing compensation for work-incurred injuries." Doc. 8 at 420. The fund or property which is identified in the Agreement is the proceeds of any recovery. By implication, that recovery includes the proceeds of any occupational insurance provided under workers' compensation laws.

Because the award funds in this case are separate, identifiable, and unmingled, they are sufficiently specific. No general levy against Appellee's assets is threatened here. A similar conclusion has been suggested by other courts attempting to apply the second *Bilyeu* criterion. *See Rashiel Salem Enterprises, LLC v. Bunton*, No. CV-11-08202-PHX-NVW, 2013 WL 3581723, at *4 (D. Ariz. July 12, 2013) (suggesting that "[i]f there were remaining benefits payments from the [ERISA] plan from which the [fiduciary] could draw the reimbursement funds, the requirement of specific property would have been met").

The Court also finds that the California statutory grounds discussed by the Bankruptcy Court do not prevent an equitable lien from attaching to the award funds. California Labor Code § 4903.1(a)(3)(A) operates in conjunction with California Labor Code § 4901. Section 4901 states that "[n]o claim for compensation nor compensation awarded, adjudged, or paid, is subject to be taken for

the debts of the party entitled to such compensation except as hereinafter provided." As a specific exception to § 4901's general prohibition of liens, § 4903(c) permits liens against compensation for the reasonable value of an injured employee's living expenses. Section 4903.1(a)(3)(A) further establishes that, when an employee is awarded temporary disability indemnity, a lien for living expenses is allowed for loss-of-time benefits paid by a self-insured employee welfare benefit plan. Such a "lien shall be allowed to the extent that benefits have been paid for the same day or days for which temporary disability indemnity is awarded and shall not exceed the award for temporary disability indemnity." Cal. Labor Code § 4903.1(a)(3)(A). When read in conjunction with § 4901's general restriction of liens, § 4903.1(a)(3)(A) functions to protect workers' compensation awards while still allowing the attachment of some portion of the award.

Once a lien for living expenses is filed by an employee welfare benefit plan, §4903.1 mandates that the WCAB must in its award provide reimbursement for benefits paid in accordance with the section. In the case of an award for temporary disability indemnity where loss of time benefits have been paid, the WCAB must allow a lien in the amount of those benefits. However, § 4903.1 does not bar the WCAB from allowing a lien for the reasonable value of the injured employee's living expenses.

Sections 4903 and 4903.1 are narrowly construed. *Rangel v. Interinsurance Exch.*, 4 Cal. 4th 1, 15 (1992). Amounts payable as "living expenses" under § 4903 are limited "to those incurred for the maintenance of the injured worker and his or her dependents." *Williams v. Workers' Comp. Appeals Bd.*, 17 Cal. App. 4th 582, 592 (1993). There is no indication here that the funds advanced by Appellant to Ms. Corbett were solely to pay her living expenses. The funds were instead based on a proportion of her pre-injury earnings. Therefore, the California Labor Code would not permit a lien against those portions of the award funds beyond the amount of the award for temporary disability. This does not, however, present any reason than an equitable lien may not attach to the extent permitted by law. The fact that some portion of a specifically identified fund may not be attached does not bear on whether the reimbursement agreement in question specifically identifies a particular fund by including both

10

attachable and non-attachable assets within that fund. Rather, the provisions of the California Labor Code cited above impact the amount of recovery that may be awarded from within the specifically identified fund. The *Bilyeu* court similarly suggested that identifying wholly exempt social security benefits as the specific fund would avoid the problems of the second criterion, even though the funds could not be assigned and the fiduciary could not attach them. *Bilyeu*, 683 F.3d at 1093. For the foregoing reasons, the Court finds that the second *Bilyeu* criterion is satisfied.

### D. Third *Bilyeu* Factor: Possession and Control of Award Funds

The third element required for the establishment of an equitable lien is that "the funds specifically identified by the fiduciary must be within the possession and control of the beneficiary." *Bilyeu*, 683 F.3d at 1092 (brackets and internal quotation marks omitted). The Bankruptcy Court concluded that this element was not established because Ms. Corbett never had possession and control of the award funds. The Bankruptcy Court explained that from the time Ms. Corbett's claim was filed in 1996 until it was resolved in 2011, "the claim was unliquidated and in the possession and control either of the WCAB and/or the state fund." *Id.* at 638. Once the claim was settled, the funds were paid to and held by the Trustee, who later distributed the funds to Appellant. *Id*. at 639. Since at no time were the award funds in Ms. Corbett's hands, the Bankruptcy Court reasoned, the funds cannot have been said to be in the beneficiary's possession and control. *Id*.

Appellant argues that the Bankruptcy Court erred in so finding. While Ms. Corbett never herself possessed the award funds, Appellant asserts that the Trustee's receipt of the funds from the WCAB satisfied the third criterion. Doc. 6 at 30-31. When Ms. Corbett declared bankruptcy, her worker's compensation claim became part of the bankruptcy estate. The right to possess and control the proceeds of that claim therefore resided in the estate under the Trustee's management, rather than with Ms. Corbett. Since a bankruptcy trustee is said to "step into the shoes" of a debtor in bankruptcy, Appellant asserts that the Trustee's possession of the award funds was sufficient to constitute the third element.

Legal causes of action to which a debtor in bankruptcy has a right automatically enter the

11

bankruptcy estate by action of 11 U.S.C. § 541(a)(1). *United States v. Whiting Pools, Inc.*, 42 U.S. 198, 205 n. 9 (1983). The Trustee of a bankruptcy estate is the representative of the estate, with the capacity to sue and be sued on behalf of the estate, and, when the estate is in a Chapter 7 bankruptcy, is charged with "clos[ing] such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. §§ 323, 704. The Trustee "stands in the shoes of the bankrupt" and may bring any suit the debtor could have instituted had it not petitioned for bankruptcy. *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005). Under bankruptcy law, then, the beneficiary's right to receive the award funds passes to the estate, and the Trustee is the party entitled to act on behalf of the estate.

      Given the special status of the Trustee in bankruptcy, the fact that it is not Ms. Corbett herself who has possession of the award funds does not defeat Appellant's right to an equitable lien. It is a well-established legal principle that "parties to a contract bind not only themselves but their personal representatives," such as the executors of the parties' post-mortem estates. *United States ex rel. Wilhelm v. Chain*, 300 U.S. 31, 35 (1937).Cases exist where a nonsignatory may be liable under ERISA for a signatory's contractual obligations, where the interests of both parties are materially inseparable and where "the signatory was really the same as, or acting on behalf of the nonsignatory." *Hotel Emps. & Restaurant Emps. Int'l Union Welfare Fund v. Gentner*, 50 F.3d 719, 722 (9th Cir. 1995). As the Trustee "steps into the shoes" of a debtor, he is essentially an "alter ego" of Ms. Corbett for the purposes of the workers' compensation claim. Other courts have held that when property was held in trust for an ERISA beneficiary by a defendant person or entity, the possession and control criterion was satisfied. *See ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 527 (5th Cir. 2013) (holding *en banc* that a plan could seek equitable reimbursement from a special needs trust of tort settlement funds); *Longaberger Co. v. Kolt*, 586 F.3d 459, 469 (6th Cir. 2009) (holding that an equitable lien was properly asserted against settlement funds held in a lawyer's trust account) *abrogated on other grounds by Montanile*, 136 S. Ct. at 656; *Admin Comm. Of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 836-37 (8th Cir. 2007) (a plan could assert an equitable lien against the trustee of his wife's special

needs trust); *Admin Comm. Of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton*, 513 F.3d 1223, 1228-29 (11th Cir. 2008) (a plan could assert an equitable lien against a conservator acting as a trustee for a special needs trust). While the Supreme Court has found that property held in a state-mandated special needs trust was not within the possession of a beneficiary for the purpose of establishing an equitable lien because the beneficiary had no control over the funds, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002), this case is distinguishable as the Trustee is acting in the place of Ms. Corbett, rather than administering property for her benefit. Since the award funds were indisputably in the possession of the Trustee, the Court finds that the third criterion has been satisfied.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the September 21, 2016, judgment of the Bankruptcy Court is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Decision and Order.

IT IS SO ORDERED.

Dated: **July 11, 2017**         **/s/ Lawrence J. O'Neill**
                                                                          UNITED STATES CHIEF DISTRICT JUDGE